IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott and Longacre Trucking,     :
               Petitioner     :
    :  No. 588 C.D. 2017
          v.     :
    :  Submitted: September 8, 2017
Workers' Compensation Appeal     :
Board (Darrow),     :
               Respondent     :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                  FILED: October 26, 2017


Scott and Longacre Trucking (Employer) petitions for review of the April 18, 2017 decision of the Workers' Compensation Appeal Board (Board) affirming the order of a workers' compensation judge (WCJ) granting a claim petition filed by Daniel Darrow (Claimant).


**Facts and Procedural History**

Claimant began working for Employer in July of 2012 as a truck driver. Claimant was injured on February 28, 2013, when he lost his footing, slipped and twisted his back while ratcheting down the strap on a load of pipe. (Finding of Fact No. 11.) Claimant sustained a low back injury, lumbosacral discogenic pain, and bilateral sacroiliac joint dysfunction. (Finding of Fact No. 6.) Claimant returned to work the following week, but was terminated for misconduct approximately two weeks later, on

March 22, 2013. (Finding of Fact No. 13.) Claimant acknowledged that he was incarcerated in July of 2015 for approximately ten days. (Board's op. at 6.)

Claimant filed a claim petition on June 17, 2015, seeking total disability benefits from March 1, 2013, and ongoing. Employer filed an answer denying all material allegations of Claimant's petition and alleging that Claimant failed to give adequate notice of his injury; failed to treat with a designated physician within the first 90 days of the injury; may have received unemployment compensation and sickness/accident/disability carrier benefits to which Employer is entitled a credit; and was not within the course and scope of employment at the time of the alleged injury.

On September 29, 2015, Employer filed a termination petition alleging that Claimant had recovered from any work-related injury as of March 6, 2013, or, in the alternative, September 15, 2015. The matter was assigned to a WCJ, who held multiple hearings.

Claimant testified that, on or about February 28, 2013, he sustained a sprain/strain to his lower back while attempting to tighten down a strap on a load of pipe, at which point he lost his footing and slipped, causing him to twist his low back and experience pain in his lower back down to his buttocks. In the early morning hours of the following day, Claimant sought care from an emergency room where he received medication and a written excuse for two days off work. Claimant testified that he then followed up with his family doctor on March 4, 2013, who provided him with a written excuse for two more days off work. Claimant testified that he returned to work on March 6, 2013, still "extremely sore" but, because it was the wintertime, there was "lighter duty work." (R.R. at 101a.) Claimant stated that his family doctor subsequently recommended that he see an orthopedic surgeon, Dr. Robert Matthews. However, prior to seeing Dr. Matthews, Claimant testified that Employer terminated him on March 22, 2013, referencing a "vulgar" statement he had written about Employer on a dry erase board in

2

the break room and stating that one of Employer's owners disliked Claimant's driving because he seemed to have more accidents. (Finding of Fact No. 12.)

Regarding the termination, the parties stipulated that Claimant had written vulgar words on a dry erase board in the break room; that Claimant had damaged a company vehicle; that Claimant was subsequently terminated; and that, at the time of his termination, there was no discussion regarding Claimant's back injury. (Finding of Fact No. 14.) Claimant testified that when he saw Dr. Matthews in April, he was placed on a 10-pound lifting restriction and received treatment in the form of medication and injections, which his subsequent doctor, Dr. John A. Kline, Jr., continued to administer when he began seeing him in 2015. (Finding of Fact No. 12.)

On cross-examination, Claimant admitted that from the time that he returned to work until the time of his termination, he worked "full duty" and continued his regular assignments without any restrictions. (Finding of Fact No. 13.) Claimant also acknowledged that he had a history of intermittent periods of chronic low back pain and that he was involved in a motor vehicle accident in 1985, where he was pinned by a fire truck against a wall, resulting in the fracture of his pelvis and spinal bones. Claimant also admitted to injuring his back in 1992 or 1993 while shoveling snow during his work as a paramedic, and stated that he did receive medical treatment but not workers' compensation benefits. Finally, Claimant also admitted to being incarcerated for 10 days in July of 2015. (Finding of Fact No. 13; R.R. at 119a-20a.)

Claimant also presented the deposition testimony of his treating physician, Dr. Kline, board certified in physical medicine and rehabilitation, who began treating Claimant on April 14, 2015, two years post-work injury. Dr. Kline testified that he evaluated Claimant and reviewed his medical records, which included the emergency room notes from the morning after the injury, an MRI report from August 4, 2014, and medical records from four other doctors, including the office notes of Dr. Matthews. Dr.

3

Kline diagnosed Claimant with bilateral sacroiliac joint dysfunction, left greater than right, and lumbosacral discogenic pain, prescribed him pain medications, and restricted him to modified-duty work with a 10-pound lifting restriction. Dr. Kline stated that although he could not give an opinion concerning Claimant's physical status prior to actually physically evaluating him, he believed the work injury was the cause of Claimant's injuries and that it would have been reasonable for the present restrictions he placed on Claimant to have extended back to the time of Claimant's initial medical treatment following the injury. (Findings of Fact Nos. 6, 22.)

Although Claimant did not present Dr. Matthews' testimony, he did present Dr. Matthews' office notes, which included: an April 2, 2013 note stating that Claimant could not do heavy work and continued to have "rather severe" low back pain; notes from April 8 and 10, 2013, suggesting that Claimant should be able to return to light duty work with a back brace; a note from May 8, 2013, taking Claimant out of work; and a May 22, 2013 note that lacks any statement about Claimant's ability to work. (Findings of Fact Nos. 6, 20.)

Employer submitted the testimony of its medical expert, Dr. Rodwan Rajjoub, a board certified neurosurgeon, who reviewed Claimant's records and performed an independent medical examination of Claimant. Dr. Rajjoub testified that Claimant would have recovered from any type of strain/sprain injury by March 6, 2013, and that, as of the date of the examination on September 15, 2015, Claimant had no muscle weakness or trigger points, he could walk on his heels and toes normally, and his gait, reflexes, and results of physical tests performed during the evaluation related to his lumbar spine were normal. (Findings of Fact Nos. 15, 23, 26.) Dr. Rajjoub also testified that he reviewed the emergency room note from the morning after the injury, which stated:

> This [is a] 46-year-old gentleman who walk[ed] in the
> Emergency Room with severe pain in the lower back for the

4

past few weeks. The patient used to have chronic low back pain off and on and used to have breaks and get a little bit better and he would have pain but for this time for the past few weeks the pain is constant and is bothering him. When he wakes up in the morning, his back is stiff and he has difficulty getting out of bed and both his thighs and gluteal areas the pain is there and stiffness is there. The patient denies any direct trauma recently but he was involved in a motor vehicle accident in 1985 when he got pinned down by a vehicle against the wall and resulted in the fracture of his pelvis and spinal bones.

(R.R. at 262a.)[1] Dr. Rajjoub created a report based upon his evaluation of Claimant and his medical records, noting:

[Claimant] [d]enies having back pain prior to his injury. I reviewed the records [Employer] supplied me with and I reminded [Claimant] that he had back problems before. He denied this and then later on stated he was involved in a [motor vehicle accident] in 1985 when he got pinned down by a vehicle against a wall that resulted in fracture of his pelvis and spinal bone. I do not have a report for the accident

---

[1] Claimant testified that when he was preparing the paperwork for his claim petition, he was surprised to see the content of the emergency room doctor's notes and subsequently asked the doctor to amend the records to reflect what Claimant believed he had told the doctor during the visit. (R.R. at 124a-26a.) The doctor created an addendum, dated April 17, 2013, which stated that Claimant experienced the pain after a slip and fall at work, but retained the statement regarding Claimant's history of lower back pain:

The patient has a history of chronic low back [pain] off and on that would get better with some rest and some pain medications but this pain since yesterday has been bothering him very much: When he woke up this morning, his back is stiff and he has difficulty getting out of bed and both his thighs and gluteal areas pain is there and stiffness is there. The patient denies any direct trauma recently but he was involved in a motor vehicle accident in 1985 when he got pinned down by a vehicle against a wall and resulted in the fracture of his pelvis and spinal bones.

(R.R. at 280a.)

or injury. He reported that he did have back pain at that time for a length of time which he did not specify the time. Again[,] in the 1990's [sic] he had an additional injury that resulted in lower back pain and he was treated for a while. Again[,] in the record it states that in 2003 he reports having acute back pain and again was treated conservatively with relief of his pain. When I reviewed the original record of 3/1/13 from [the emergency room hospital with him,] . . . Mr. Darrow had denied that history despite I read it [sic] in front of him as well as his sister. Furthermore[,] I reminded him of the additional office visits of 3/4/13, 3/29/13 & 4/2/13 from Dr. Robert Matthews, [which indicated the same history, and] he denied what is written in the history. He blamed his doctor for not reporting his history properly despite that I reminded him [sic] that the history would have came [sic] from him at the time of the interview. He blamed all the physicians who seen [sic] him in the past for [the] incorrect history as he stated. In the history of one of the entries of 3/27/13[,] he had upper back pain with no injury. He did not recall this.

(R.R. at 265a.)

On August 3, 2016, the WCJ filed a decision and order granting Claimant's claim petition and awarding him total disability benefits for a closed period from March 22, 2013, the date of his termination, to September 14, 2015, the date of Dr. Rajjoub's examination. The WCJ also granted Employer's termination petition, terminating benefits as of September 15, 2015.[2] Finally, the WCJ ordered Employer to pay Claimant's counsel $482.07 for costs of litigation.

In his opinion and order, the WCJ rejected the testimony of Dr. Kline as less persuasive than Dr. Rajjoub's, since he was not able to "corroborate his opinion with any objective evidence." (Finding of Fact No. 24.) The WCJ accepted the testimony of Dr. Rajjoub as credible and persuasive. Specifically, the WCJ credited Dr. Rajjoub's testimony that Claimant was fully recovered as of the date of his examination but rejected

---

[2] The WCJ did not make a determination regarding whether Claimant's benefits should have been suspended for the 10-day period that he was incarcerated.

6

the notion that Claimant was recovered as of the date he returned to work. (Finding of Fact No. 26.)

With regard to Claimant, the WCJ stated that he found his testimony not credible, except with regard to his testimony that he was injured while at work. (Findings of Fact Nos. 18, 25.) As to Claimant's history of back pain, the WCJ stated, "This WCJ was neither impressed nor persuaded by the testimony of the claimant. . . . [C]laimant was not candid with Dr. Rajjoub with regard to a history of back pain and problems before February 28, 2013." (Finding of Fact No. 25.) However, with regard to Claimant's testimony about his injury, the WCJ found that it was corroborated by two reports from Dr. Matthews, which confirmed that Claimant was injured while trying to bind down a load of pipe. (Finding of Fact No. 19.) The WCJ also found that Claimant returned to work on March 6, 2013, "on light duty," despite acknowledging that there were "no medical documents to suggest that [Claimant's light-duty restriction] was supported by a physician." (Finding of Fact No. 20.) In reaching that determination, the WCJ relied on Dr. Matthews' April and May 2013 office notes, taken after Claimant was terminated, indicating that Claimant could return to light work in a back brace, could not do heavy work and continued to have back strain/sprain, but ultimately took Claimant out of work entirely. (Finding of Fact No. 20.) Accordingly, the WCJ found that Claimant met his burden of proof to establish that he sustained a work-related injury. (Conclusion of Law No. 2.)

As to Employer's termination petition, the WCJ concluded that Employer had failed to meet its burden of proving that Claimant's benefits should have been terminated as of March 6, 2013, since "[E]mployer had placed him in a light duty position recognizing his work injury." (Conclusion of Law No. 3.) The WCJ also determined that, although Claimant was discharged for misconduct on March 22, 2013, Employer was not excused from paying benefits for Claimant's work injury because the termination

7

occurred after the work injury. (Conclusion of Law No. 4.) The WCJ, however, determined that Employer had met its burden of proving that Claimant was fully recovered as of the date of Dr. Rajjoub's evaluation on September 15, 2015, and granted the termination petition as of that date. (Conclusion of Law No. 6.)

Both Employer and Claimant appealed to the Board. Employer maintained that the WCJ erred by: (1) granting the claim petition because Claimant failed to prove that he suffered a work-related injury and ongoing period of disability and because the only evidence that the WCJ relied upon to grant the petition, Claimant's medical records, was inadmissible hearsay, which should not have been considered because the claim exceeded 52 weeks; and (2) applying the wrong legal standard to determine whether the loss of earnings was the result of Claimant's alleged disability since Claimant was discharged for misconduct while working without restrictions. Employer argued, in the alternative: (1) the termination petition, if not moot, should have been granted as of March 6, 2013, or August 14, 2013, as the medical evidence established Claimant was fully recovered as of those dates; and (2) the WCJ erred in failing to grant an automatic suspension of benefits for the 10-day period in 2015 during which Claimant admitted he was incarcerated.

Claimant argued that the WCJ erred in: (1) capriciously disregarding the testimony of his expert, Dr. Kline; (2) finding Claimant was terminated for "misconduct"; (3) granting a termination of benefits as of September 15, 2015; and (4) denying an award of litigation costs for fees related to Dr. Kline's deposition.

The Board affirmed the WCJ's decision. With regard to Employer's argument, it held: (1) Claimant had met his burden of proof on the claim petition because the medical records were admissible since Employer had used them to cross-examine its own medical expert; (2) Employer did not prove the acts Claimant committed resulting in his termination were committed in bad faith; (3) the medical records of Dr. Matthews

8

related back to the date of the injury and established that Claimant had employment restrictions at the time of his termination; (4) the WCJ properly granted the termination petition as of September 15, 2015, as Employer did not present competent evidence of full recovery until that date; and (5) the WCJ was not obligated to grant a suspension of benefits for the time that Claimant was incarcerated because Employer had not specifically requested that relief. The Board also rejected all of Claimant's arguments.

Employer thereafter filed an appeal with this Court,[3] renewing its previous arguments.

**Discussion**

A claimant bears the burden of demonstrating a right to compensation by establishing all of the elements necessary to support an award. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). As part of this burden, a claimant is required to establish a causal connection between the disability and the work-related incident. *Calcara v. Workers' Compensation Appeal Board (St. Joseph Hosp. & Franciscan Health Sys.)*, 706 A.2d 1286, 1289 (Pa. Cmwlth. 1998). When a claimant suffers an injury that is not obviously causally connected, unequivocal medical evidence is required, and "hearsay medical evidence to which there is no objection must be corroborated by other competent medical evidence, and not simply by the testimony of the claimant or another untrained lay witness." *Id.* at 1288; *see also Zander v. Workmen's Compensation Appeal Board (Warrington Equipment Co.)*, 449 A.2d 784, 786 (Pa. Cmwlth. 1982) (holding a claimant failed to prove his claim because of a lack of

---

[3] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

medical testimony which "clearly and expressly" connected his current disability with a compensable injury).  To be unequivocal, "the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that in his professional opinion the result in question did come from the assigned cause."  *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 498 A.2d 800, 802 (Pa. Cmwlth. 1985).

With regard to the presentation of medical records as evidence to support a claim petition, section 422(c) of the Workers' Compensation Act (Act)[4] provides in part:

> Where any claim for compensation at issue before a workers' compensation judge involves fifty-two weeks or less of disability, either the employe or the employer may submit a certificate by any health care provider as to the history, examination, treatment, diagnosis, cause of the condition and extent of disability, if any, and sworn reports by other witnesses as to any other facts and such statements shall be admissible as evidence of medical and surgical or other matters therein stated and findings of fact may be based upon such certificates or such reports. Where any claim for compensation at issue before a workers' compensation judge exceeds fifty-two weeks of disability, a medical report shall be admissible as evidence *unless the party that the report is offered against objects to its admission.*

77 P.S. §835 (emphasis added).  In *Walker v. Unemployment Compensation Board of Review*, we expounded that:

> (1) Hearsay evidence, *properly objected to*, is not competent evidence to support a finding of the Board[;] (2) Hearsay evidence, *admitted without objection*, will be given its natural probative effect and may support a finding of the Board, *if it is*

---

[4] Act of June 2, 1915, P.L. 736, added by the Act of June 26, 1919, P.L. 642, *as amended*, 77 P.S. §835.

10

*corroborated by any competent evidence in the record*, but a finding of fact based *solely* on hearsay will not stand.

367 A.2d 366, 370 (Pa. Cmwlth. 1976) (emphasis in original) (citations omitted).[5]

Employer argues that the WCJ erred in granting the claim petition because Claimant failed to meet his burden of proof that he suffered a work-related injury and an ongoing period of disability. Employer further argues that the sole evidence that the WCJ relied upon in granting the claim petition—Claimant's medical records—was inadmissible hearsay, and should not have been considered because the claim for disability exceeded 52 weeks.

Citing *Huff v. Workmen's Compensation Appeal Board (Ingalls Steel of Pennsylvania)*, 453 A.2d 753 (Pa. Cmwlth. 1982), the Board rejected this argument, stating that the WCJ did not err in admitting the hearsay reports of Dr. Matthews since Employer used them to cross-examine Dr. Rajjoub. In *Huff*, at a hearing before a referee, the testimony of the claimant was presented in addition to the depositions of his treating physician and the employer's examining physician. In order to support the testimony of its own physician witness, the employer sought to introduce the written reports of a third consulting physician, to which the claimant's physician had referred him. The reports were entered into evidence over the claimant's objection. On appeal, this Court held the following:

> Claimant contends that admission of the reports of the consulting physician was an error of law and without them the findings of the referee are unsupported by substantial competent evidence. We do not agree. The reports of the consulting physician, while admittedly hearsay, were properly employed during cross-examination to impeach the credibility of [claimant's] treating physician. In addition, they tended to corroborate the testimony of [employer's]

---

[5] This Court has since adopted the *Walker* rule in workers' compensation matters. *Calcara*, 706 A.2d at 1288.

> neurologist and were discussed by the referee in that manner. In workmen's compensation cases, hearsay testimony, if relevant and material to facts at issue, may be considered for the additional light it sheds on the matter.

*Id.* at 755.

*Huff* stands for the unremarkable proposition that hearsay evidence is admissible to impeach the credibility of a witness. However, *Huff* did not state that uncorroborated hearsay statements in a claimant's medical records could be used as the exclusive means to support a claim petition where the causal connection between the disability and the work-related incident is not obvious. Nor did the *Huff* decision overrule the holding in *Walker* that hearsay evidence admitted without objection must be corroborated by competent evidence in the record in order to support a finding, but that a finding of fact cannot be based solely on hearsay evidence. *Walker*, 367 A.2d at 370.

In this case, Claimant had a clear and lengthy history of back pain dating back to 1985, about which the WCJ found Claimant to have been dishonest. (Finding of Fact No. 25.) Indeed, the original emergency room record from the morning after the injury stated that Claimant had chronic back pain off and on but, "*for the past few weeks*[,] the pain [was] constant and [was] bothering him." (R.R. at 262a) (emphasis added). Moreover, Claimant himself admitted to having sustained two previous injuries to his back and to having chronic low back pain. (Finding of Fact No. 13.) Employer, which denied both the work injury and the wage loss claim, clearly disputed Claimant's injury from the start of the proceedings. (R.R. at 132a-33a.) As such, the causal connection between Claimant's disability and the work-related injury was not obvious, since it was not clear how or in what way his pre-existing condition was triggered or aggravated by the February 28, 2013 work incident. Consequently, Claimant bore the burden of demonstrating the existence of such a causal connection by presenting unequivocal medical evidence from an expert. *Calcara*, 706 A.2d at 1289.

12

In support of his claim petition, Claimant introduced his medical records, including the notes of Dr. Matthews, which the WCJ found credible. (Finding of Fact No. 20.) While Employer contends that the medical records should have been disregarded because it objected to their admission, Claimant vigorously disputes this, arguing that Employer never properly made or preserved such an objection. However, we need not resolve this issue because, even assuming that all of Claimant's medical records were admissible, Claimant was nonetheless required to corroborate the out-of-court statements made by Dr. Matthews in the medical records with other competent medical evidence to adequately establish a causal connection. *Id.* at 1289.

Claimant attempted to do so by presenting the testimony of his physician, Dr. Kline; however, Dr. Kline's testimony was rejected as not credible and thus could not have corroborated the medical records. (Finding of Fact No. 24.) Neither could the testimony of Claimant, an untrained lay witness, have corroborated the medical records, even if the WCJ were to have found Claimant credible. *See Calcara*, 706 A.2d 1289 (The "relaxation [of the rules of evidence under the Act] cannot include permitting an untrained person to corroborate evidence relating to the causal relationship established by an expert in a particular field."). Finally, contrary to Claimant's suggestion, the testimony of Employer's medical expert also did not corroborate any causal relationship established by medical records because, as Employer points out, Dr. Rajjoub testified that any back injury Claimant had sustained was resolved by the time he returned to work. (R.R. at 222a.) Dr. Rajjoub testified that the typical injury that results from an incident like the one Claimant described is "a classic case of strain/sprain of the back," but went on to state that Claimant's chronic pain, such as that which he reported in 2003, could be attributed to his 1985 motor vehicle accident. (R.R. at 216a-17a.) Further, Dr. Rajjoub testified that he reviewed an x-ray of Claimant's spine taken on March 1, 2013, and noted that there was no evidence of any acute trauma to the lumbar spine. (R.R. at 225a.) Clearly, Dr.

13

Rajjoub's testimony cannot be construed as corroborating a causal relationship between Claimant's alleged disability and the work-related incident. Therefore, even if the medical records were admissible, Claimant nonetheless did not meet his burden of proving a causal relationship because he did not present any competent medical evidence to corroborate Dr. Matthews' statements in the medical records.

The WCJ and Board erred in disregarding Claimant's burden of demonstrating a causal relationship in this case by concluding that Claimant's testimony about his injury, corroborated by the medical records from Dr. Matthews, was sufficient for him to prove entitlement to compensation. To the contrary, it was Claimant's medical records that required corroboration by a medical expert who could establish the causal relationship between Claimant's injury and his alleged loss of earning power. Because he failed to do so, the WCJ and Board erred in determining Claimant established a right to compensation.

Accordingly, the order of the Board is reversed.

_____
PATRICIA A. McCULLOUGH, Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott and Longacre Trucking,       :
                Petitioner     :
                         :  No. 588 C.D. 2017
          v.            :
                         :
Workers' Compensation Appeal  :
Board (Darrow),             :
                Respondent   :

## *<u>ORDER</u>*

AND NOW, this 26th day of October, 2017, the April 18, 2017 decision of the Workers' Compensation Appeal Board is hereby reversed.

_____
PATRICIA A. McCULLOUGH, Judge